UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

ANDERSON TRADE CORPORATION
1800 Industrial Blvd, Suite 110
Colleyville, Texas 76034,

*Plaintiff*,

v. Case No. 3:26-cv-1052

LYNN PROTEINS, INC.
W1933 U.S. Highway 10
Granton, Wisconsin 54436,

*Defendant*.

---

**COMPLAINT**

---

Plaintiff Anderson Trade Corporation ("ATC"), by and through its undersigned counsel, for its Complaint against Lynn Proteins, Inc. ("Lynn"), states and alleges as follows:

***NATURE OF DISPUTE***

1. Anderson Trade Corporation is a family-owned commodity trading company serving a variety of industries, including food & beverage, sport nutrition, and secondary markets. ATC buys Whey Protein Concentrate 80%, commonly referred to and traded as "Instant WPC 80," from producers like Lynn Proteins, Inc.

2. Lynn agreed to provide ATC 12 loads of Instant WPC 80 each weighing 42,328.32 pounds at $5.05/lb. Lynn provided ATC 7 of the agreed-upon loads and accepted nearly $1.5 million in payments from ATC. Despite its agreement, Lynn refused to supply ATC the remaining loads unless ATC paid over twice the agreed-upon price.

3. ATC files this suit to redress the injury caused by Lynn's breach of the parties' contract.

***PARTIES***

4. Plaintiff Anderson Trade Corporation is a Texas corporation and maintains its principal place of business at 1800 Industrial Blvd, Suite 110, Colleyville, Texas.

5. Lynn Proteins, Inc. ("Lynn") is a Wisconsin corporation with its principal place of business at W1933 U.S. Highway 10, Granton, Wisconsin 54436.

6. Upon information and belief, William L. Schwantes is Lynn's registered agent for service of process and is located at W1933 U.S. Highway 10, Granton, Wisconsin 54436.

***JURISDICTION AND VENUE***

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because this is a civil action between parties that are completely diverse and the amount in controversy exceeds $75,000, exclusive of interests and costs.

8. This Court has personal jurisdiction over Lynn because Lynn is registered with the Wisconsin Secretary of State's Office, has a physical presence in Wisconsin, and regularly conducts business in Wisconsin.

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2) because, on information and belief, Lynn resides in this district within the meaning of § 1391(c)(2) and (d), and a substantial part of the events or omissions giving rise to this complaint occurred in this district.

***FACTUAL BACKGROUND***

10. In December of 2018, ATC began purchasing various dairy products, including Instant WPC 80, Regular WPC 80, Lactose, Whey Permeate, and WPC 34, from Lynn to sell to ATC's customers. Between December of 2018 and the present, ATC has purchased and paid Lynn for approximately $42.45 million of these dairy products across 354 loads.

11. In late August 2025, ATC's customers began reaching out to ATC about purchasing additional Instant WPC 80. In response to these customer demands, ATC began emailing Lynn seeking to purchase additional loads of Instant WPC 80 for delivery between October and December 2025.

12. In these exchanges, ATC advised Lynn that its "Lynn customers," "monthly Lynn users," and "normal Lynn customers," were "getting frustrated" at ATC's inability to supply them with Lynn products and that ATC "needed to keep [their] normal Lynn customers satisfied." (Exh. A at 3, 4, 5)

13. In response to ATC's requests, Lynn repeatedly advised ATC that it did not yet have any loads that were ready to ship. (*See id.*)

14. On September 3, 2025, ATC's CEO, Tyler Anderson, sent Lynn's Sales Manager, Regan Schwantes, another email inquiring whether Lynn would agree to sell ATC 12 (42,328.32 lbs. per load) loads of Instant WPC 80 at a price of "$4.95-$5.00" per pound. After some back-and-forth, Lynn and ATC agreed to the price of $5.05/per pound. (*Id.* at 2)

15. Attached hereto and incorporated herein as **Exhibit A** is a true and correct copy of email correspondence between ATC and Lynn dated July 23, 2025 to September 3, 2025.

***ATC Issues PO 1781***

16. On September 4, 2025, ATC issued Purchase Order No. 1781 ("PO 1781") to Lynn for 12 loads of Instant WPC 80 at 42,328.32 lbs. per load, at the agreed-upon price of $5.05 per pound, FOB Granton, Wisconsin. (Exh. B at 2)

17. Attached hereto and incorporated herein as **Exhibit B** is a true and correct copy of PO 1781.

18. The price of each individual load of PO 1781 was $213,758.02, with the total price of PO 1781 being $2,565,096.24. (*Id.*)

19. PO 1781 called for the shipment of Loads 1-12 over the course of a three-month period, with four loads being shipped in October 2025; four in November 2025; and four in December 2025. (*Id.*) The purchase order specified FOB Granton, WI. (*Id.*) When a load was ready for shipment, ATC was responsible for arranging transportation, including engaging the carrier to pick up the load from Lynn's facility in Granton, WI and delivering it directly to ATC's customers. Lynn did not arrange or provide transportation for these shipments.

***Lynn Performs PO 1781***

20. Following ATC's issuance of PO 1781, and between September 2025 and April 2026, ATC requested that Lynn release PO 1781 Loads 1-7.

21. In response to each of ATC's requests, Lynn delivered the requested loads at the agreed-upon price of $213,758.02, or $5.05 per pound.

22. On October 28, 2025, Lynn released Load 1 to ATC.

23. On November 20, 2025, Lynn released Load 2 to ATC.

24. On January 12, 2026, Lynn released Load 3 to ATC.

25. On January 19, 2026, Lynn released Load 4 to ATC.

26. On March 2, 2026, Lynn released Load 5 to ATC.

27. On April 15, 2026, Lynn released Load 6 to ATC.

28. On May 27, 2026, Lynn released Load 7 to ATC.

29. ATC accepted Lynn's delivery of Loads 1-7.

30. For each load Lynn delivered pursuant to ATC's PO 1781, Lynn's invoice and bill of lading would clearly reference ATC's purchase order.

31. Although Lynn ultimately delivered Loads 1-7 to ATC, Lynn's deliveries were repeatedly delayed. Such delays were not unusual in the parties' longstanding business relationship, as Lynn had frequently delivered loads after the originally scheduled delivery dates

specified in ATC's purchase orders, and ATC had routinely accommodated and accepted these delayed shipments.

32. In response to ATC's repeated requests for the release of loads under PO 1781, Lynn consistently attributed its inability to fulfill the requested shipments on schedule to its own production delays, equipment issues, scheduling constraints, and limited product availability. These explanations were communicated contemporaneously to ATC as the reasons for Lynn's delayed performance for Loads 1-7.

33. During these communications, Lynn did not notify ATC that it was suspending or terminating its obligations under PO 1781 because of any alleged payment delinquency.

34. As a result of Lynn's delayed shipments, Lynn delivered Loads 1-7 well after the October-December 2025 schedule specified in PO 1781, culminating in Load 7 being delivered to ATC in May of 2026.

35. ATC accommodated and accepted each of Lynn's delayed shipments. Neither party treated the December 2025 delivery schedule as extinguishing the outstanding quantities under PO 1781. Lynn continued supplying loads expressly identified with PO 1781 at the agreed-upon price of $5.05 per pound through May 2026, and ATC continued accepting, and paying for those shipments.

36. On February 26, 2026, Lynn's Sales Manager, Regan Schwantes, expressly acknowledged that the original purchase order remained outstanding. In an email to ATC concerning additional product purchases on that date, Schwantes stated, "The only option would be to cancel the original PO and start a new one, but I assume you want to keep the one you have." (Exh. C at 2-3)

37. Attached hereto and incorporated herein as **Exhibit C** is email correspondence between Lynn and ATC, including the February 26, 2026 email from Lynn to ATC.

38. This February 26, 2026 email from Schwantes demonstrates that Lynn continued to recognize the existence of the original purchase order after December 2025 and understood that ATC intended to maintain it rather than cancel it. (*See id.*)

39. ATC paid Lynn the agreed-upon price for Loads 1-7 in the ordinary course of business.

40. In total, ATC paid to Lynn approximately $1.5 million for Loads 1-7.

41. Lynn accepted each of ATC's payments for Loads 1-7.

***Lynn Refuses to Deliver Load 8***

42. In May 2026, ATC requested that Lynn release Load 8. Lynn initially advised ATC that it did not have sufficient product available to release Load 8 and that ATC would have to wait.

43. Between May and July 2026, ATC repeatedly requested that Lynn release Load 8 under PO 1781, including specific requests made on May 28, June 5, June 8, and June 17, 2026. Despite these repeated requests, Lynn failed to release Load 8, instead advising ATC that it was experiencing production delays, product availability constraints, or was otherwise unable to release the requested product.

44. Lynn never advised ATC that PO 1781 had expired, or that ATC's requests for Load 8 were ineffective.

45. On July 28, 2026, Lynn advised ATC that it would no longer supply ATC with Instant WPC 80 at a purchase price of $5.05 per pound because the market had changed significantly and the current market price of Instant WPC 80 was $12.70 per pound.

46. Lynn advised ATC that ATC would either be required to purchase the remaining contracted product at current market pricing, which Lynn quoted as $12.70 per pound, or if ATC declined to do so, Lynn would cancel the outstanding purchase order.

47. In an email dated July 29, 2026, Lynn reaffirmed that position to ATC, but agreed to reduce the proposed price from $12.70 per pound to $12.40 per pound.

48. On August 4, 2026, ATC rejected Lynn's attempt to unilaterally alter the price term of PO 1781 and demanded that Lynn perform under PO 1781 by releasing Loads 8-12 at the agreed-upon purchase price of $5.05 per pound.

49. ATC's August 4, 2026 correspondence advised Lynn that Lynn's refusal to deliver the remaining loads constituted a breach of the parties' agreement. ATC also confirmed that it remained ready, willing, and able to accept the remaining loads of PO 1781 at the agreed-upon price.

50. To date, Lynn has refused to make delivery of Loads 8-12.

***ATC's Damages from Lynn's Breach***

51. In late July 2026, and as a direct result of Lynn's refusal to release Load 8, ATC purchased substitute product from another supplier at $11.40 per pound in order to satisfy ATC's business needs.

52. As a result of Lynn's refusal to release Load 8, ATC incurred an additional cost of $268,784.83 for Load 8 alone.

53. ATC was also forced to purchase substitute product from another supplier at $11.69 per pound to satisfy customer demands for the amount of Instant WPC 80 that Lynn had promised ATC in Load 9.

54. As a result of Lynn's refusal to release Load 9, ATC incurred an additional cost of $281,060.04 for Load 9 alone.

**COUNT I: BREACH OF CONTRACT**

55. ATC incorporates by reference the allegations of each preceding paragraph as though fully set forth herein.

56. ATC and Lynn have a binding contract for the sale of goods.

57. Lynn accepted and performed the contract by delivering Loads 1-7 upon ATC's requests and accepting payment for Loads 1-7 from ATC.

58. Through their subsequent communications and course of performance, including Lynn's continued shipment of loads under PO 1781 at the agreed-upon contract price through May 2026, the parties mutually accommodated and modified the original delivery schedule, or alternatively waived strict compliance with that schedule, without modifying the agreed-upon quantity or price of the product.

59. ATC performed its obligations under PO 1781, including requesting delivery of the contracted loads and paying Lynn for all seven loads delivered. Lynn accepted those payments and continued performance under PO 1781, including delivering multiple loads after the originally contemplated shipment schedule.

60. Lynn breached the contract by expressly and unequivocally repudiating it on July 28, 2026.

61. Lynn's refusal to deliver Loads 8-12 at the agreed-upon purchase price of $5.05 per pound also breached the parties' contract.

62. Lynn lacked just excuse for repudiating PO 1781: "changed market conditions" do not provide just excuse for repudiating a contract.

63. Lynn has not rescinded its repudiation.

64. As a direct result of Lynn's breach, ATC was forced to incur $549,844.87 in incremental costs to procure replacement product for Loads 8 and 9.

65. As a direct result of Lynn's breach, ATC will be forced to pay substantially more to purchase equivalent product for Loads 10-12. ATC has undertaken efforts to mitigate its damages.

66. ATC performed all conditions precedent to filing this action. Following Lynn's refusal to honor PO 1781, ATC provided written notice of Lynn's breach within a reasonable time following that breach, demanded performance under the agreed-upon terms, and afforded Lynn an opportunity to fulfill its contractual obligations. Despite these demands, Lynn has failed and refused to deliver the remaining five loads at the agreed-upon contract price.

**COUNT II: PROMISSORY ESTOPPEL**
**(IN THE ALTERNATIVE TO COUNT I)**

67. ATC incorporates by reference the allegations of each preceding paragraph as though fully set forth herein.

68. Lynn promised to deliver 12 loads of Instant WPC 80 to ATC at a price of $5.05 per pound.

69. During the parties' eight-year course of dealing, involving the sale of 354 loads of dairy products, Lynn had always delivered Instant WPC 80 and other dairy products to ATC at the parties' agreed-upon-price.

70. Based on the parties' eight-year course of dealing, Lynn knew or should have known that ATC would rely on Lynn's September 3, 2025, promise to deliver 12 loads of Instant WPC 80 to ATC at a price of $5.05 per pound.

71. Based on the parties' eight-year course of dealing, ATC reasonably relied on Lynn's promise to deliver 12 loads of Instant WPC 80 at a price of $5.05 per pound.

72. In reliance on Lynn's promise, ATC began making commitments to its regular customers to supply Instant WPC 80 based upon the quantities and agreed-upon pricing under PO 1781, with the reasonable expectation that Lynn would fulfil its obligation to supply all 12 loads.

73. ATC relied upon Lynn's commitment to supply Instant WPC 80 at $5.05 per pound in determining the pricing and availability of the product offered to its regular customers and in making corresponding supply commitments.

74. Lynn broke its promise to ATC by refusing to deliver PO 1781 Loads 8-12 to ATC at the promised price of $5.05 per pound.

75. As a direct result of Lynn's refusal to honor its promise, ATC was forced to incur $549,844.87 in incremental costs to procure replacement product for Loads 8 and 9 to avoid breaching its contracts with customers.

76. As a direct result of Lynn's refusal to honor its promise, ATC will be forced to pay substantially more to purchase equivalent product for Loads 10-12 than it would have if Lynn had followed through on its obligations.

WHEREFORE, ATC prays for the following judgment and relief:

a. Entry of judgment in ATC's favor for all damages allowed by law, including, but not limited to, compensatory, consequential, incidental, reliance, statutory, and exemplary, in an amount to be determined at trial;

b. An award to ATC of its costs, attorneys' fees, and expenses, and the maximum pre-judgment and post-judgment interest allowed by law;

c. Any other relief that the Court deems just and equitable.

Date: October 21, 2026

STAFFORD ROSENBAUM LLP

By: *Electronically signed by Jessica C. Mederson*
Jessica C. Mederson, SBN 1087910
Isaac S. Brodkey, SBN 1124492
222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, WI 53701-1784
Phone: 608.256.0226
Facsimile: 608.259.2600
Email: jmederson@staffordlaw.com
ibrodkey@staffordlaw.com

*Attorneys for Plaintiff Anderson Trade Corporation*